**Jose A. Klein,** OSB No. 083845
jose@kleinmunsinger.com
**Damien T. Munsinger,** OSB No. 124022
damien@kleinmunsinger.com
Klein Munsinger LLC
600 NW Naito Parkway
Suite G
Portland, Oregon  97209
Telephone: (503) 568-1078

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON
3:17-cv-18153:17-cv-1815
PORTLAND DIVISION

| | |
|---|---|
| **MICHELLE EASTHAM,** an individual; and **TERRIANNE MACELLVEN,** an individual**;** | **Case No.: 3:17-cv-01815** |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| **RAINIER SCHOOL DISTRICT NO. 13,** an Oregon Public School District; **ROBERT MICHAEL CARTER**, an individual, in his individual and official capacity; and **LAURIE KASH**, an individual, in her individual and official capacity; | **Unlawful Employment Actions; Civil Rights Violations** **DEMAND FOR JURY TRIAL** **Prayer: $1,856,000.00** |
| Defendants. | |

Page 1 – COMPLAINT

## I.   INTRODUCTION

1.

Plaintiff Michelle Eastham and plaintiff Terrianne MacEllven bring this action against defendant Rainier School District No. 13 ("School District") for economic and non-economic damages, punitive damages, equitable relief, and costs and attorney's fees for harm caused by defendant School District and its officers, employees, agents, or representatives, including defendants Robert Michael Carter and Laurie Kash, in contravention of plaintiffs' legal rights.

2.

Plaintiffs were Instructional Assistants for the Rainier School District.  When they received a graphic disclosure of sexual abuse from a six year-old student, School District Superintendent Michael Carter and his wife, the Director of Special Education, prohibited plaintiffs from reporting the abuse because they had a personal relationship with the alleged abuser's caretaker and did not believe the student's disclosures.  When plaintiffs followed Oregon law and reported the suspected abuse anyway, defendants engaged in a sustained campaign of harassment, abuse, and intimidation not only of the  plaintiffs but also of one plaintiff's school-aged children.

## II.   JURISDICTIONAL ALLEGATIONS

3.

This Court has jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court also should exercise supplemental jurisdiction over plaintiffs' claims

Page 2 – COMPLAINT

arising under state law pursuant to 42 U.S.C. § 1367, as the state claims asserted arise from the same nucleus of operative facts as plaintiffs' federal claims.

4.

Venue is proper within the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all of plaintiffs' claims arose in this judicial district.

5.

Plaintiffs submitted timely notice of plaintiffs' intent to sue in accordance with Or. Rev. Stat. § 30.275.

6.

Plaintiffs also timely filed claims with Oregon's Bureau of Labor and Industries ("BOLI") raising issues alleged herein.  Plaintiffs' administrative cases have been closed and plaintiffs have been issued a notice of right to sue from BOLI.  Plaintiffs have timely filed this matter within the time limits set forth in the right to sue notice issued by BOLI.

## III.    GENERAL FACTUAL ALLEGATIONS

7.

Defendant Rainier School District No. 13 is a public school district, which operates the public schools located within the city of Rainier, Oregon. At all material times, the School District employed 25 or more employees in Oregon.

Page 3 – COMPLAINT

8.

Defendant Robert Michael Carter is the Superintendent for School District.  The
Superintendent is the School District's chief executive officer, and has authority to delegate to
other School District personnel the powers and duties conferred upon the Superintendent.  At all
material times, either Defendant Carter or Defendant Kash were serving as the Director of
Human Resources for the School District.

9.

The School District's School Board has delegated to the Superintendent the authority to
specify required actions and design detailed arrangements for operation of the School District.
The detailed arrangements designed by the Superintendent constitute the regulations governing
the School District.

10.

At all material times, defendant Laurie Kash was the Director of Special Education, and
the Director of Student Services, for the School District.  Defendant Kash is married to
Defendant Carter.  Defendant Kash would also act in the capacity of School District
Superintendent when defendant Carter was unavailable or when defendant Carter would delegate
authority to her.

11.

At all material times, plaintiffs were supervised at work by the School District's
employees or agents, including defendants Carter and Kash.  Plaintiffs were subject to the

Page 4 – COMPLAINT

supervision of defendants Carter and Cash; plaintiffs reasonably relied on the actual or apparent

authority of the School District's employees, supervisors and management while at work.

12.

Plaintiff Michelle Eastham was hired by the School District as an Instructional Assistant

at Hudson Park Elementary School in January 2015.  Plaintiff Eastham worked in a special

education classroom.  Her employment was terminated by the School District on or around June

15, 2016.  Plaintiff Eastham was recalled on or around October, 2016, and she is currently

employed by the School District.  At all material times, plaintiff Eastham was a classified

employee with permanent status who had a property interest in her position at the School

District.

13.

Plaintiff Terrianne MacEllven was hired by the School District as an Instructional

Assistant in September 2014.  Plaintiff MacEllven worked in a special education classroom.  Her

employment with the School District ended when she was constructively terminated from her

employment on or around September 28, 2016.    At all material times, plaintiff MacEllven was a

classified employee with permanent status who had a property interest in her position at the

School District.

14.

Instructional Assistants are school employees who work in classrooms under licensed

teachers.  Plaintiffs Eastham and MacEllven were assigned by the School District to work in a

classroom with one special education teacher, James Place.

Page 5 – COMPLAINT

15.

When plaintiffs were assigned to Mr. Place's classroom, Mr. Place did not have a teaching degree and was not a certified teacher. The School District was aware that Mr. Place did not have a teaching degree and was not a certified teacher.

16.

At the time that plaintiffs were assigned to Mr. Place's classroom, Mr. Place worked on a restricted transitional teaching license, which required him to have a mentor. On information and belief, defendant Kash was acting as Mr. Place's mentor. On information and belief, for a period of several months in 2014, Mr. Place was the classroom teacher assigned by defendant Kash to teach in a special education classroom, despite Mr. Place not having the required licensure.

17.

Prior to defendant Kash issuing an emergency teaching certificate to Mr. Place, he occupied the same position of plaintiffs, Instructional Assistant. After unilaterally deciding to promote Mr. Place, Defendant Kash further caused the School District to dedicate funds to pay for Mr. Place's continuing education. On information and belief, since plaintiffs' hire dates, defendant Kash has never undertaken any similar action to support similarly situated female Instructional Assistants. Defendant Kash also made gendered, denigrating comments regarding plaintiffs, including referring to them as "two bitches that won't stop running their mouths." On information and belief, defendant Kash made no such comments regarding male employees of the School District during the periods of plaintiffs' employment.

Page 6 – COMPLAINT

18.

As school employees, plaintiffs Eastham and MacEllven are mandatory reporters, bound

by Oregon law to report to law enforcement and/or the Oregon Department of Human Services

("DHS") when they have reasonable cause to suspect child abuse or neglect has occurred.

Defendants Carter and Kash are also mandatory reporters pursuant to Oregon law.

19.

Oregon has clearly established laws regarding the reporting of suspected child abuse or

neglect, including Or. Rev. Stat §§ 419B.005 to 419B.050.  Defendant Carter and Defendant

Kash were aware of these established laws.  Or. Rev. Stat § 419B.007 specifies that it is

"necessary and in the public interest to require mandatory reports and investigations of abuse of

children," and Or. Rev. Stat § 419B.0010 requires that reports be made "immediately."

20.

While plaintiffs were working on or around October 16, 2015, a six-year-old female

student disclosed ongoing physical and sexual abuse to them.  The student disclosed that a

high-school-aged boy who had access to her in her home was sexually abusing her, by luring her

outside and away from adult supervision, and touching her underneath her underwear.  The

student also disclosed physical abuse, including being punched by the boy.  The student

presented with bruises that were consistent with her disclosures, as well as evidence of a recent

bloody nose.  She further disclosed that the boy would cover her mouth with his hand while

Page 7 – COMPLAINT

pinching her nose, preventing her from breathing.  The student was crying and begging not to be sent back to her home.

21.

Plaintiffs informed Mr. Place, their supervisor in the classroom, that they would need to report the student's disclosures to DHS and/or law enforcement.  Mr. Place in turn notified plaintiffs' supervisor, defendant Kash, of plaintiffs' intentions.

22.

Defendant Kash forbade plaintiffs from making any report about the disclosures. Plaintiff Eastham met with defendant Kash and informed defendant Kash that plaintiffs disagreed with her instruction, and asserted that as mandatory reporters they had an independent duty to make a report to law enforcement and/or DHS.  Defendant Kash nonetheless stood by her instruction, and told plaintiff Eastham that the six-year-old student in question was a "fantastical liar," and was making this up.  Plaintiff Eastham informed defendant Kash that the student was presenting with physical symptoms consistent with her claims.

23.

Notwithstanding  defendant Kash's orders, as citizens concerned for the safety and welfare of inhabitants of their community, plaintiffs felt that they had a higher obligation to ensure that the state learns of and investigates suspected child abuse.  With that purpose in mind, Plaintiff MacEllven, with plaintiff Eastham's support, reported the suspected abuse to DHS and the Columbia County Child Abuse Assessment Center.  Plaintiff MacEllven also discussed the

Page 8 – COMPLAINT

need to make a report with an associate of hers who is a Sheriff's Deputy.  Plaintiff Eastham

reached out to the City of Rainier Police Department regarding the suspected abuse.

24.

Days later, on or about October 21, 2015, defendant Kash summoned plaintiffs, along

with all the other Instructional Assistants and Mr. Place, into her office.  Defendant Kash was

visibly angry, and castigated plaintiffs Eastham and MacEllven for making the report.  Before the

assembled Instructional Assistants and other School District employees, defendant Kash revealed

that she had a personal relationship with the high-school-aged boy about whom the student had

made the disclosures, and was friends with the boy's caretaker.  Defendant Kash also repeated

her allegations that the disclosing six-year-old student was a "liar," and was also "nuts" and a

"flirt who likes to flirt with men," and "bat her eyelashes at them."  Defendant Kash further

claimed that the student's mother was a prostitute.  Defendant Kash verbally reprimanded

plaintiffs for violating her direct order not to report the suspected abuse, and decreed that any

further reports would result in a written reprimand.

25.

During this meeting, defendant Kash threatened plaintiffs with retaliation, stating "You

want to play this game, let's play this game." Defendant Kash threatened to knowingly make

false reports against the Instructional Assistants, including that one of plaintiffs was "screwing" a

little girl behind a tree.  Defendant Kash named the student who made the disclosures during this

meeting.  Defendant Kash further contended that her verbal orders superseded plaintiffs'

Page 9 – COMPLAINT

statutory mandatory reporting obligations, and that no employee could report suspected abuse without her direct orders, on pain of disciplinary action.

26.

Plaintiffs had recently undergone their annual training regarding their mandatory reporting obligations, they understood defendant Kash's instructions to be contrary to law and School District policies. Plaintiffs informed defendant Kash that they opposed her decree as wrong and inconsistent with law and policy.

27.

The next day, on or about October 22, 2015, defendant Kash circulated an email to several teachers and instructional assistants. Defendant Kash issued a second fiat regarding how teachers and Instructional Assistants should carry out their obligation to report child abuse. Defendant Kash required all teachers and Instructional Assistants to wait 24 hours from the time of learning of a reportable issue before making any report of suspected abuse or neglect. Defendant Kash also instructed the email recipients to fill out a form on the School District's website after making any report of abuse. Information provided in the form would be accessible by all School District administrators. Plaintiffs believed this requirement to publish reports of abuse or neglect to all School District administrators would compromise confidential information disclosed in the reports.

28.

That same day, defendant Carter, the School District Superintendent (and defendant Kash's husband) called a meeting that included plaintiffs, other Instructional Assistants, and

Page 10 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR 97209
PHONE (503) 568-1078

Hudson Park Elementary School Principal Heidi Blakley.  In the meeting, defendant Carter endorsed the delayed-reporting scheme imposed by defendant Kash.  During that meeting, defendant Carter openly threatened to punitively reassign plaintiffs to different positions.

29.

Immediately following this meeting, plaintiffs met with Jim Tift, their union representative, and informed Mr. Tift that they planned to file a complaint with the School District against defendants Carter and Kash.  Mr. Tift informed plaintiffs that they "already had a target on their backs" and that if they filed a complaint they would have "bigger targets on their backs."  Mr. Tift informed plaintiffs that they would likely be subject to retaliation by defendants Carter and Kash for filing a complaint.

30.

On or around October 26, 2015, plaintiffs each completed the online School District form regarding their earlier report of suspected child abuse, having been directed to fill out the form by defendants Carter and Kash.  Mr. Place monitored plaintiffs while they completed the form, and admonished plaintiffs, complaining that it was taking them too long to complete to form.

31.

That same day, plaintiff MacEllven filed a letter of complaint to the School Board.  In the letter, plaintiff MacEllven addressed several acts by defendants Kash and Carter, which she deemed to be unlawful or contrary to School District policy.  Among the issues complained about, were being prohibited from reporting suspected child abuse or neglect;  the receipt of a verbal reprimand for making a report of suspected abuse to DHS and law enforcement; the

Page 11 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

inappropriate comments made by defendant Kash regarding the student; the conflict of interest

inherent in defendant Carter handling workplace complaints made against his spouse; and

plaintiff MacEllven's belief that defendants Carter and Kash were creating a hostile work

environment rife with the imminent threat of unfair treatment and unlawful retaliation.

32.

Defendant Carter had previously had complaints filed against him by School District

employees.  In 2014, a petition on the website Change.org titled "Remove Michael Carter as

Superintendent" garnered 582 supporters.

33.

On or about October 30, 2015, plaintiff Eastham filed a complaint with the School

District office against defendants Carter and Kash, for their unlawful directive on reporting child

abuse, among other issues.  In the days immediately after plaintiffs filed their complaints,

defendant Carter's behavior changed towards plaintiffs.  He began to make unusual,

unannounced visits to plaintiffs' classroom to observe them in a manner that plaintiffs found

retaliatory and intimidating.

34.

Around that time, plaintiffs learned that defendant Carter had expressly forbade plaintiffs

from making complaints to, or even talking to, School Board members.  Plaintiffs are unaware of

any other School District employee being forbidden to speak to School Board members.  On

information and belief, defendant Carter and Kash have vacationed with one or more School

Board members.

Page 12 – COMPLAINT

35.

On or about November 1, 2015, in contravention of defendant Carter's directive, plaintiffs resubmitted their complaints about defendants Carter and Kash to the School Board. The complaints cited the unlawful directives regarding reporting suspected child abuse, and defendant Carter's handling of disciplinary matters involving his wife, which plaintiffs perceived as a conflict of interest.  On information and belief, the complaints never reached the School Board to which they was directed, because defendant Carter intercepted the complaints and prevented them from being delivered to the School Board.

36.

Jim Tift informed plaintiffs that defendant Carter was threatening to accuse plaintiffs of harassment in retaliation for filing their complaints.

37.

Approximately two days later, defendant Carter ordered plaintiff Eastham to meet with him to discuss the complaint which had been made against him.  During the meeting, plaintiff Eastham objected to defendant Carter's handling of the complaint against him and his wife defendant Kash, as School District policy required that the School Board investigate complaints against the Superintendent.  During the meeting, defendant Carter informed plaintiff Eastham that his wife, defendant Kash, would no longer supervise her. Instead, school principal Ms. Blakely would become plaintiff Eastham's supervisor.  Defendant Carter intimidated and harassed plaintiff Eastham in this meeting,  keeping her in his office for over two hours, ultimately forcing her to sign off on her complaint against defendant Carter so that it would not

Page 13 – COMPLAINT

go the School Board.  When plaintiff Eastham would not agree to also sign off on her complaint against defendant Kash, defendant Carter ordered plaintiff Eastham to immediately report to defendant Kash's office.  Defendant Kash also attempted to coerce plaintiff Eastham into signing off on her complaint against defendant Kash, which plaintiff Eastham refused to do.

38.

Plaintiff MacEllven was also subject to a long meeting with defendant Carter around that time, where he asserted that he had authority to investigate complaints against himself as Superintendent, and tried to convince plaintiff MacEllven to sign off on his ending her complaint against him.

39.

During the 2015-2016 school year, plaintiff Eastham had three sons who were pupils in the School District, in elementary and middle school.  Around this time plaintiff Eastham learned that defendant Kash had started making unusual visits to plaintiff Eastham's sons' elementary and middle school classrooms.  After entering the classroom, defendant Kash stared at plaintiff Eastham's sons in a way that was intimidating, and which caused one of them such distress and confusion that he fled the classroom.  Prior to the filing of the October, 2015, complaint to the School Board, defendant Kash had never visited one of plaintiff Eastham's sons' classrooms before.

40.

Around this time, plaintiff Eastham began to notice strange occurrences in her sons' education records.  In at least one instance, a grade that had been inputted as an "A" was

Page 14 – COMPLAINT

subsequently changed without explanation into an "F."  Plaintiff Eastham bagan to fear that

defendants Carter and/or Kash were taking actions against her children in retaliation for plaintiff

Eastham's complaints.  Plaintiff Eastham was determined to remain employed at the School

District in part to be able to protect her children from further retaliation by defendants Carter and

Kash.

41.

The actions of defendants Carter and Kash had an adverse effect on plaintiff Eastham's

physical well being.  On or around November 5, 2015, plaintiff Eastham went to urgent care due

to the mental stress caused by defendants Carter's and Kash's actions and threats against her, and

especially against her school-aged children who were being educated in the School District.

Plaintiff Eastham was suffering acute anxiety due to her treatment by defendants.

42.

The record modifications adversely and erroneously impacting her children continued.

On or around November 10, 2015, plaintiff Eastham received a letter from the School District

office threatening court action because her son was supposedly truant.  In fact, the child had not

missed enough school days to be considered truant, and was in good standing with his

attendance.  Based upon information provided to her by her son's school's principal and

attendance secretary, plaintiff Eastham believed that the false letter was instigated by defendant

Carter and was a form of retaliation against her.

Page 15 – COMPLAINT

43.

On or around November 13, 2015, plaintiff Eastham filed a third complaint against defendants Carter and Kash, directing it directly to the School Board, and to defendant Kash's supervisor Kerri Smith, who is employed by the Northwest Regional Education Service District, which assists schools in Columbia, Tillamook, and Washington counties.  This complaint reiterated the allegations included in her previous complaints.

44.

Following plaintiff Eastham's third complaint, plaintiffs met separately with an investigator from the Northwest Regional Education Service District, on or around November 20, 2015.  Plaintiff MacEllven informed the investigator about what she believed to be violations of state and federal law including "Karly's law," which sets strict timelines for state evaluation of children suspected to be suffering from neglect or abuse. Plaintiff MacEllven further complained about the School District's mismanagement, and defendants Carter's and Kash's misconduct, which could threaten the health and wellbeing of the School District's students.  Plaintiff Eastham discussed her treatment by and her complaints against the School District and defendants Carter and Kash during her interview.  After the investigation was complete, plaintiff Eastham received a letter from defendant Kash's supervisor, Ms. Smith, which indicated that the allegations against defendant Kash had been substantiated by the investigation.

45.

The day plaintiff Eastham learned that her complaints had been substantiated, she was summoned to a meeting with the principal, Ms. Blakely.  Ms. Blakely instructed plaintiff

Page 16 – COMPLAINT

Eastham that she was prohibited from discussing the investigation and her complaints.  Plaintiff

Eastham disclosed that defendants Carter and Kash had and were retaliating against her.

46.

Plaintiffs subsequently learned that defendant Kash had been making disparaging

remarks about them to other School District employees.  Defendant Kash was overheard by other

school employees discussing "two bitches that won't stop running their mouths" who need to

"learn to shut up and just do their fucking jobs."  Plaintiffs understood these comments to be

threatening, and made in reference to themselves.  Plaintiffs learned from their union

representative that defendant Carter had again threatened to terminate their employment because

they had reported suspected child abuse, and had engaged in whistleblowing in regards to

defendants Carter's and Kash's misconduct.

47.

The following month, in December, plaintiffs had their lunch schedules modified, without

explanation, so that they would not have lunch at the same time.  Defendants Carter and Kash

were aware that plaintiffs regularly ate their lunch together and discussed the terms and

conditions of their employment during that time.  Once plaintiffs reported the sudden change to

their union representative as retaliatory, the schedule change was summarily reversed.

48.

Also in December 2015, defendant Carter gave a presentation on reporting child abuse in

which he again presented false information that contradicted School District policy and the law.

This presentation, along with other statements and directives from defendant Carter represented

Page 17 – COMPLAINT

School District policy regarding reporting suspected child abuse and neglect, and was contrary to law.  Specifically, defendant Carter ordered staff to make only verbal reports to DHS, and to not make any reports at all to other public agencies, and reiterated his directive requiring mandatory reporters to fill out online School District forms regarding suspected child abuse or neglect. Defendant Carter prohibited plaintiffs and all School District employees from reporting suspected child abuse to local police officers, and instructed all School District employees to not disclose any suspected child abuse or neglect to clergy or other personal counselors.

49.

During this time, plaintiffs were required to check in with classroom teacher Mr. Place when they left for lunch, and when they returned from lunch, because defendant Carter had falsely accused plaintiffs of being late arriving to work or returning from lunch.  Plaintiffs went so far as to take photographs of the wall clock in order to be able to prove they were not late as a defense against further false accusations from defendant Carter.

50.

Defendant Carter also falsely accused plaintiff MacEllven of being late, of doing union business while on duty, and misusing sick leave.  Plaintiff MacEllven was subject to increased scrutiny similar to that experienced by plaintiff Eastham, which was distinct from the treatment afforded to other similarly-situated employees.  Plaintiffs believe this conduct was retaliatory for plaintiffs' prior report of suspected child abuse or neglect and their opposition to defendants Carter's and Kash's directives and schemes for reporting child abuse.

Page 18 – COMPLAINT

51.

On one or more occasions, defendant Carter threatened legal action against plaintiffs in retaliation for their speaking out on matters of public concern and opposing his unlawful directives and conduct.

52.

On or around January 5, 2016, plaintiff Eastham filed an additional complaint with the School Board chair, renewing the claims made in her November complaint and alleging that the School District's complaint review policy was being violated.  After plaintiff Eastham filed this complaint, defendant Carter falsely accused her of conducting union business while at work, and he also began a pattern of frequently visiting her sons' classrooms and plaintiffs' classroom.

53.

Plaintiff Eastham informed classroom teacher Mr. Place and school principal Ms. Blakely that she believed she was being retaliated against by defendants Carter and Kash.

54.

On or around January 13, 2016, plaintiff Eastham followed up on her prior complaints to the School Board chair, only to learn that the chair had never received the complaints she filed.

55.

Approximately two days later, plaintiff Eastham received a letter from defendant Carter and an email from Ms. Blakely which informed her that she was being transferred and assigned to a new supervisor.  Both the letter and email falsely stated that plaintiff Eastham had requested these changes.

Page 19 – COMPLAINT

56.

On or around January 27, 2016, plaintiffs were interviewed about their complaints by a

School Board investigator.  The investigation was into the conduct of defendant Carter.  On or

around February 3, 2016, plaintiff Eastham filed an additional complaint with the School Board.

Subsequent to the filing of this complaint, defendant Carter began visiting plaintiff Eastham's

son's classrooms multiple times per week.

57.

On or around February 8, 2016, the School Board responded to plaintiff Eastham's

complaint by indicating that it would not investigate the complaint, and that instead plaintiff

Eastham should contact the implicated individuals and resolve the issues on her own.

58.

On or around April 5, 2016, a student disclosed to plaintiffs and another staff member

that defendant Kash had made sexual remarks to him.  The minor student disclosed that

defendant Kash called a blue ball that the student was playing with "Uncle Scrotal" and referred

to him having "blueballs."  The student disclosed that he was afraid of defendant Kash.

Plaintiffs reported the disclosure to Ms. Blakley, who discouraged plaintiffs from filing a

complaint by telling them that a complaint against defendant Kash would not solve anything.

Plaintiffs reported to DHS the student's disclosure of  inappropriate statements.  As a result of

making these reports, plaintiffs received a written reprimand from Ms. Blakley.

Page 20 – COMPLAINT

59.

On or around April 11, 2016, plaintiffs mailed a tort claims notice to the School District.

Around two weeks later, defendant Carter convened a meeting and informed plaintiffs and other

Instructional Assistants in Mr. Place's classroom that they could no longer file internal

complaints or complaints of suspected child abuse or neglect.

60.

On or about May 19, 2016, plaintiff Eastham received a preliminary layoff letter for the

following school year.  The layoff letter did not list a date of termination.  Around June 1, 2016,

plaintiff Eastham received an additional layoff letter with the word "Draft" written across the

bottom of the page.  The second letter still did not list an official termination date.  Per School

District policy, employees are to receive their official layoff letters by May 30.

61.

On or around June 8, 2016, defendant Carter held separate meetings with plaintiffs and

several School District administrators.  Defendant Carter was angry that plaintiffs submitted

internal complaints to the School Board, and again asserted that he had authority to investigate

himself and resolve complaints against himself.  Defendant Carter threatened plaintiff Eastham

with a charge of insubordination if she could not immediately answer his aggressive barrage of

accusatory questions.  Plaintiff Eastham felt intimidated and uncomfortable answering the

questions, and told this to defendant Carter.  Defendant Carter demanded that plaintiff Eastham

describe how her complaints could be resolved, and plaintiff Eastham replied that defendant

Carter should cease retaliating against her and her children.  Defendant Carter stated that he

Page 21 – COMPLAINT

would cease the retaliation, but did not.  Defendant Carter made similar demands of plaintiff
MacEllven regarding applying pressure on plaintiff MacEllven to resolve complaints made
against him without notifying the School Board.

62.

On or around June 15, 2016, plaintiff Eastham received an email stating that her
termination effective date would be June 15, 2016.  Plaintiff Eastham was terminated on or
around that date, and did not receive her final paycheck until five days later.

63.

Finding the hostile work environment at the School District, perpetrated and maintained
by defendants Carter and Kash to be intolerable, and reasonably concluding that the School
Board either could not or would not establish a workplace where she would be free from
harassment and retaliation, plaintiff MacEllven submitted her resignation to the School District
on or around September 28, 2016.  Defendants created, maintained, or condoned working
conditions so intolerable that a reasonable person in plaintiff MacEllven's circumstances would
have left employment because of them.

64.

Like plaintiff MacEllven, plaintiff Eastham was subject to a hostile work environment at
the School District which was perpetrated and maintained by defendants Carter and Kash.  Like
plaintiff MacEllven, plaintiff Eastham was subject to unlawful harassment and retaliation for
filing reports of suspected child abuse and internal complaints.  Like plaintiff MacEllven,
plaintiff Eastham was subject to conduct by defendants that was sufficiently severe or pervasive

Page 22 – COMPLAINT

that it interfered with plaintiffs' work and/or created a hostile, intimidating or offensive work environment.

65.

During their employment by the School District, plaintiffs complained to their union representative about the unlawful conduct they were subject to.  Plaintiffs' union representative, Jim Tift, stated that he did not want to file a union grievance or complaint regarding the treatment of plaintiffs, because he feared retaliation by defendant Carter against his own grandchild.  Mr. Tift's grandchild was a pupil in the School District at the time.  Because of the hostile work environment created and maintained by defendant Carter, no union grievance or complaint was filed on plaintiff's behalf.

66.

When the School District did commission an investigation into allegations made by plaintiffs in their complaints to defendant Carter, defendant Kash, and defendant School District, the investigation confirmed plaintiffs' allegations regarding the treatment they endured.  Plaintiffs requested but never received a copy of the investigation report.

67.

In October 2016, plaintiff Eastham returned to work at the School District as an Instructional Assistant.  Part of plaintiff Eastham's motivation for returning to the School District was to to ensure the safety of her children who were School District pupils.  Once plaintiff Eastham returned to work at the School District, defendant Carter would appear and remain in plaintiff Eastham's classroom one or two times per week.  Once plaintiff Eastham returned,

Page 23 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

defendant Carter also appeared in her children's classroom one or two times per week.

Defendant Carter would also engage in conduct such as invading plaintiff Eastham's personal

space whenever an opportunity afforded, which compounded plaintiff Eastham's discomfort,

emotional distress, and fear of further retaliation against her and her children.  Upon one visit to

plaintiff Eastham's children's classroom, defendant Carter referred to plaintiff Eastham's child

and told the substitute they would need to "keep an eye on this one" or words to that effect.

68.

In addition to the mistreatment by defendant Carter, after returning to the School District

plaintiff Eastham was ostracized and subject to humiliating treatment by other School District

employees.  For example, one day when plaintiff Eastham was in line for lunch, the lunch server

refused to serve her any food.  A teacher standing in line behind plaintiff Eastham was served.

Plaintiff Eastham was told that if she did not want to be retaliated against, she should not have

come back to the School District.  When the official School District staff photos came out,

plaintiff Eastham was not included among the staff.  At the end of the year, plaintiff Eastham was

still not included with a staff member picture or name.

69.

In October 2017, plaintiff Eastham made a request to the School District to take leave for

her own serious health condition.  Plaintiff Eastham's doctor recommended that plaintiff

Eastham take leave in order to care for her serious health condition.  Plaintiff Eastham submitted

her doctor's orders regarding the taking of leave to the School District.  While plaintiff Eastham

was out, defendant Carter would require plaintiff Eastham to meet with him, in person, at the

Page 24 – COMPLAINT

School District.  Plaintiff Eastham asked defendant Carter to inform her via email about what topics he needed to discuss in person, and defendant Carter refused.

70.

When plaintiff MacEllven was constructively discharged from employment by the School District, she did not receive the due process to which she was entitled from the School District. When plaintiff Eastham was fired from the School District, she did not receive the due process to which she was entitled from the School District.  Neither plaintiff received notice and an opportunity to respond before their employment ended.

71.

As  a result of her treatment by defendants, plaintiff MacEllven has suffered and continues to suffer from exacerbated symptoms of post-traumatic stress disorder, anxiety, nightmares, and insomnia.  Plaintiff MacEllven was subject to ostracism, isolation and undue harassment and surveillance by her colleagues and School District administration.

72.

As a result of her treatment by defendants, plaintiff Eastham has suffered and continues to suffer from panic attacks, insomnia, nightmares, depression, post-traumatic stress disorder, and alopecia (hair loss).  Plaintiff Eastham was subject to ostracism, isolation and undue harassment and surveillance by her colleagues and School District administration.

//

//

//

Page 25 – COMPLAINT

## IV.   CLAIMS FOR RELIEF

## First Claim: Whistleblower Retaliation, Count 1 - Or. Rev. Stat. § 659A.199

## (By plaintiffs against defendant School District)

### 73.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

### 74.

The School District is an employer subject to Or. Rev. Stat. § 659A.199.

### 75.

Plaintiffs engaged in various activities protected by Or. Rev. Stat. § 659A.199, including the making of good faith complaints to defendants regarding unlawful actions, including but not limited to violations of School District policies and laws regarding school employees and the reporting of suspected child abuse or neglect.

### 76.

Defendants discriminated against plaintiffs in the terms and conditions of their employment by harassing plaintiffs, and by creating a hostile work environment by intimidating plaintiffs and their school-aged children in their classrooms in retaliation for plaintiffs complaints and opposition to unlawful directives and practices.

### 77.

As a direct and proximate result of defendants' conduct, plaintiffs have suffered and will

Page 26 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

78.

As a direct and proximate result of defendants' conduct, plaintiffs suffered economic losses in an amount to be proven at trial.

79.

Defendants' conduct was wanton and willful.

80.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendants.

**Whistleblower Retaliation, Count 2 - Or. Rev. Stat. § 659A.203**

**(By plaintiffs against defendant School District)**

81.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

82.

The School District is a public employer subject to the provisions of Or. Rev. Stat. § 659A.203.

Page 27 – COMPLAINT

**KLEIN MUNSINGER LLC**
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

83.

Or. Rev. Stat. § 659A.203. provides that it is an unlawful employment practice for a public employer to prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of a violation of any federal or state law, rule or regulation by the state, agency or political subdivision, or mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision.

84.

The statute also prohibits public employers from requiring an employee to give notice prior to making any disclosure or engaging in discussion described in this section (with limited exceptions), and further provides that public employers may not discourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in the statute.

85.

Defendants violated Or. Rev. Stat. § 659A.203(1) by denying creating or intentionally maintaining a hostile work environment in retaliation for plaintiffs reports of violations of School District policy and applicable laws, and by directing and requiring plaintiffs to cease submitting complaints regarding defendant Carter's and Kash's misconduct upon pain of discipline, reprimand, and adverse employment actions.

Page 28 – COMPLAINT

86.

Defendants further violated the statute by directing and requiring plaintiffs to give notice to defendants prior to reporting any suspected child abuse or neglect without first giving notice to defendants, and by restraining plaintiffs from filing complaints and reporting suspected child abuse or neglect.

87.

As a direct and proximate result of defendants' conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

88.

As a direct and proximate result of defendants' conduct, plaintiffs suffered economic loss in an amount to be proven at trial.

89.

Defendants' conduct was wanton and willful.

90.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendant School District for this claim.

Page 29 – COMPLAINT

## Second Claim: OFLA Interference

### (By plaintiff Michelle Eastham against defendant School District)

91.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

92.

The School District is an employer subject to the Oregon Family Leave Act ("OFLA").

93.

The School District is an employer subject to the Family and Medical Leave Act ("FMLA").

94.

Plaintiff Eastham was employed by defendant School District for at least 180 days and worked on average of at least 25 hours a week during the 180 days before her leave time began. Plaintiff Eastham was eligible for and entitled to protected leave under Or. Rev. Stat. § 659A.171 (OFLA).

95.

Defendant School District had notice of plaintiff Eastham's need for use of her OFLA protected leave.

Page 30 – COMPLAINT

96.

Defendant School District interfered with plaintiff Eastham's protected leave by demanding that plaintiff Eastham personally attend meetings with defendant Carter at times when plaintiff Eastham was utilizing protected leave, preventing defendant Eastham from taking leave.

97.

As a direct and proximate result of defendant School District's conduct, plaintiff Eastham has suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

98.

As a direct and proximate result of defendant School District's conduct, plaintiff Eastham has suffered economic loss in an amount to be proven at trial.

99.

Plaintiff Eastham is entitled to recover her reasonable attorneys' fees, expert fees, costs and disbursements from defendants.

Page 31 – COMPLAINT

**Third Claim: OFLA Discrimination and Retaliation**

**(By plaintiff Michelle Eastham against defendant School District)**

100.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

101.

Plaintiff Eastham engaged in various activities protected under Or. Rev. Stat. § 659A.183, including requesting use of her protected OFLA leave time for her qualifying serious health conditions arising from defendant Carter's and Kash's harassing, intimidating, and threatening conduct towards plaintiff Eastham.

102.

Plaintiff Eastham has suffered various adverse employment actions including, but not limited to, being threatened with termination and subject to a hostile work environment because of her use of leave time, which conduct violated Or. Rev. Stat. § 659A.183.

103.

Plaintiff Eastham's attempted use or prospective use of OFLA leave was a motivating factor that caused defendant School District to discriminate against plaintiff Eastham in the terms and conditions of her employment.

Page 32 – COMPLAINT

**KLEIN MUNSINGER LLC**
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR 97209
PHONE (503) 568-1078

104.

As a direct and proximate result of defendant School District's conduct, plaintiff Eastham has suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

105.

As a direct and proximate result of defendant School District's conduct, plaintiff Eastham has  suffered economic loss in an amount to be proven at trial.

106.

Plaintiff Eastham is entitled to recover her reasonable attorneys' fees, expert fees, costs and disbursements from defendants.

**Fourth Claim: First Amendment Retaliation, Count 1 - 42 U.S.C.A. § 1983**

**(By plaintiffs against defendant School District)**

107.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

108.

Defendant School District is subject to liability under 42 U.S.C.A. § 1983 for the execution of School District policies or practices that result in constitutional violations.

Page 33 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

109.

Defendant School District deprived plaintiffs of their First Amendment rights to freedom of speech to oppose and report in good faith information that they believed to be illegal conduct, as well as evidence of violations of federal and/or state laws, rules, or regulations on the basis of discrimination and retaliation for the aforementioned complaints by harassing plaintiffs; threatening to transfer plaintiffs;  terminating plaintiffs' employment; retaliating and interfering with plaintiff Eastham's use of protected leave; creating or intentionally maintaining a hostile work environment.

110.

Defendant School District is liable for the deprivation of plaintiffs' First Amendment rights because the deprivation was pursuant to defendant School District's custom, policy or practice of deterring employees from speaking as citizens on matters of public importance by reporting violations of federal or state laws, rules or regulations by a state, agency or political subdivision within the School District and deterring employees from supporting other employee's allegations of violations of federal or state laws, rules or regulations by a state, agency or political subdivision.

111.

At all material times, defendant Carter, defendant Kash, and/or school principal Ms. Blakely had final policy making authority for defendant School District and engaged in the acts alleged herein while acting as a final policymaker for defendant School District. As a result,

Page 34 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

defendant School District is liable for the deprivation of plaintiffs' First Amendment rights because the unlawful decisions were made or approved by defendant Carter, defendant Kash, and/or Ms. Blakely while acting as a final policymaker for defendant School District.

112.

Defendant School District is liable for the unlawful deprivation of plaintiffs' First Amendment rights because persons in policy-making positions at the School District ratified the unlawful conduct knowing the basis of the unlawful conduct.  Defendants Carter and Kash acted with reckless and willful disregard for plaintiffs' constitutional rights.

113.

As a direct and proximate result of defendant School District's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

114.

As a direct and proximate result of defendant School District's conduct, plaintiffs have suffered economic loss in an amount to be proven at trial.

115.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendants.

Page 35 – COMPLAINT

**Fifth Claim: First Amendment Retaliation, Count 2 - 42 U.S.C.A. § 1983**

**(By plaintiffs against defendants Carter and Kash, in their individual capacities)**

116.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

117.

At all material times, defendants Carter and Kash were acting under color of state law in regards to plaintiffs.

118.

Defendants Carter's and Kash's conduct deprived plaintiffs of their particular rights under the First Amendment to report suspected child abuse or neglect and to oppose the actions of defendants Carter and Kash attempts to unlawfully muzzle plaintiffs' reporting of suspecting child abuse or neglect, and preventing plaintiffs from making complaints.

119.

As a direct and proximate result of defendants Carter's and Kash's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

Page 36 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR 97209
PHONE (503) 568-1078

120.

As a direct and proximate result of defendants Carter's and Kash's conduct, plaintiffs have  suffered economic loss in an amount to be proven at trial.

121.

Because the conduct of defendants Carter and Kash were motivated by malicious intent or was the result of recklessness or callous indifference to plaintiffs' protected rights, plaintiffs shall seek punitive damages against defendants Carter and Kash in an amount to be proven at trial.

122.

Pursuant to 42 U.S.C. § 1988, plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendants Carter and Kash.

### **Sixth Claim: Equal Protection - 42 U.S.C.A. § 1983**

### **(By plaintiffs against defendant School District)**

123.

Plaintiffs re-allege and incorporate by reference the previous allegations set forth in this complaint.

124.

Defendant School District has a custom, policy or practice of discrimination on the basis of reporting violations of federal or state laws, rules or regulations by a state, agency or political

Page 37 – COMPLAINT

subdivision and of deterring complaints of the aforementioned discrimination. Defendant employees who support this custom, policy or practice are generally not harassed; threatened with position transfers; subject to termination of employment; or subject to created or intentionally maintained working conditions so intolerable that a reasonable person in plaintiffs' circumstance would leave employment because of them.

125.

Defendant School District employees who disobey defendant School District's policy and/or custom and practice of discrimination on the basis of reporting violations of federal or state laws, rules or regulations by a state, agency or political subdivision and deterring complaints of the aforementioned discrimination are generally not harassed; threatened with position transfers; subject to termination of employment; or subject to created or intentionally maintained working conditions so intolerable that a reasonable person in plaintiffs' circumstance would leave employment because of them.

126.

Defendant School District, via its officers including defendants Carter and Kash, harassed plaintiffs, threatened plaintiffs with position transfers, terminated plaintiffs' employment; and/or subjected plaintiffs to created or intentionally maintained working conditions so intolerable that a reasonable person in Plaintiff's circumstance would have left employment because of them because plaintiffs opposed defendant School District's violations of federal or state laws, rules or regulations by a state, agency or political subdivision.  Defendants Carter and Kash acted with

Page 38 – COMPLAINT

reckless and willful disregard for plaintiffs' constitutional rights.

127.

Defendant School District via its officers, agents, and employees conspired to harass plaintiffs, to threaten plaintiffs with a position reassignment, and/or subject plaintiffs to created or intentionally maintained working conditions so intolerable that a reasonable person in plaintiffs' circumstance could have left employment. These actions were taken by defendant School District for vindictive and malicious reasons lacking any rational basis in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

128.

Defendant is liable for the deprivation of plaintiffs' Equal Protection rights because the deprivation of plaintiffs' rights was pursuant to a defendant School District's custom, policy or practice of discrimination on the basis of opposing defendant School District's violations of federal or state laws, rules or regulations by a state, agency or political subdivision and deterring complaints of the aforementioned discrimination.

129.

At all material times, defendant Carter, defendant Kash, and/or Ms. Blakely had final policy making authority for defendant School District and engaged in the acts alleged herein while acting as a final policymaker for defendant School District. As a result, defendant School District is liable for the Equal Protection violations because the unlawful decisions were made or approved by defendant Carter, defendant Kash, and/or Ms. Blakely while acting as a final

Page 39 – COMPLAINT

policymaker for defendant School District.

### 130.

Defendant School District is liable for the deprivation of plaintiffs' Equal Protection rights because persons in policy-making positions ratified the unlawful conduct knowing the basis of the unlawful conduct.

### 131.

As a direct and proximate result of defendant School District's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

### 132.

As a direct and proximate result of defendant School District's conduct, plaintiffs have suffered economic loss in an amount to be proven at trial.

### 133.

Pursuant to 42 U.S.C. § 1988, plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendant School District for this claim.

Page 40 – COMPLAINT

**Seventh Claim: Intentional Infliction of Emotional Distress**

**(By plaintiffs against all defendants)**

134.

By engaging in harassing conduct, including abusively castigating plaintiffs for reporting suspected child abuse to law enforcement and DHS, defendant Kash intended to inflict, and did inflict, emotional distress upon plaintiffs while acting in her capacity as a School District employee.  Defendant Kash's behavior was outside the bounds of socially acceptable conduct given defendant Kash's supervisory position over plaintiffs.

135.

Defendants Carter and Kash further intended to inflict, and did inflict, severe emotional distress upon plaintiff Eastham by intentionally singling out her children for harassing and intimidating treatment before their classmates while acting in their capacity as School District employees and officials.  This conduct required plaintiff Eastham to maintain employment at the School District, despite the deleterious effects on her health and wellbeing intended by defendants Carter and Kash, in order to ensure her children's protection and ability to receive an education.  Defendants Carter and Kash knew that emotional distress was certain or substantially certain to result from their conduct.

136.

Defendant Kash intended to inflict, and did inflict, emotional distress upon plaintiffs by using derogatory and physically threatening language regarding them, including but not limited

Page 41 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

to, referring to them as "two bitches that won't stop running their mouths" who need to "learn to shut up and just do their fucking jobs."  Defendant Kash's behavior was outside the bounds of socially acceptable conduct given defendant Kash's supervisory position over plaintiffs and administrative position at the School District where plaintiffs were employed and where their children attended school.

137.

Defendant Carter intended to inflict, and did inflict, severe emotional distress upon plaintiff Eastham by repeatedly and punitively summoning her to meetings, including one where he insisted on being alone with him in his office, despite his knowledge that plaintiff Eastham suffered significant emotional and physical adverse consequences as a result of his conduct.

138.

As a direct and proximate result of defendants Carter's and Kash's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

139.

As a direct and proximate result of defendants Carter's and Kash's conduct, plaintiffs have  suffered economic loss in an amount to be proven at trial.

140.

Plaintiffs seek punitive damages against defendant Carter and Kash for this claim.

Page 42 – COMPLAINT

141.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendants Carter and Kash for this claim.

**Eighth Claim: Gender Discrimination - Or. Rev. Stat. § 659A.030**

**(By plaintiffs against defendant School District and defendant Kash)**

142.

The School District is an employer subject to Or. Rev. Stat. § 659A.030.

143.

Or. Rev. Stat. § 659A.030 provides that an employer engages in an unlawful employment practice when it discriminates on the basis of gender.

144.

The School District discriminated against plaintiffs on the basis of their gender when the School District's official, defendant Kash, promoted a male Instructional Assistant to a teaching position while denying the same opportunities to his female colleagues, plaintiff MacEllven and plaintiff Eastham. School District teachers receive higher pay and increased compensation and benefits as compared to Instructional Assistants, including increased Public Employees Retirement System ("PERS") benefits.

145.

Defendant Kash's discriminatory animus against plaintiffs because of their gender was

Page 43 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR 97209
PHONE (503) 568-1078

evidenced by defendant Kash's gendered statements about plaintiffs, such as calling them "two bitches that won't stop running their mouths" who need to "learn to shut up and just do their fucking jobs." These discriminatory comments also evidenced defendant Kash's discriminatory stereotyping of plaintiffs based on their gender.

146.

As a direct and proximate result of defendants School District's and Kash's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

147.

As a direct and proximate result of defendants School District's and Kash's conduct, plaintiffs have  suffered economic loss in an amount to be proven at trial.  Plaintiffs' economic loss includes the value of lost pay, benefits, and PERS retirement benefits plaintiffs would have accrued had defendant's discriminatory conduct not curtailed their opportunities for advancement.

148.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendants School District and Kash for this claim.

Page 44 – COMPLAINT

**KLEIN MUNSINGER LLC**
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

## Ninth Claim: Denial of Due Process - 42 U.S.C.A. § 1983

### (By plaintiffs against defendant School District)

149.

Plaintiffs' employment at the School District ended without plaintiffs receiving adequate notice an an opportunity to be heard.

150.

As permanent School District employees, plaintiffs had a property interest in continued employment with the School District.  Though the School District required plaintiffs to sign annual acknowledgments of the terms and conditions of their employment, the School District did not employee plaintiffs as contracted employees whose contracts were subject to annual review and potential renewal.

151.

The School District denied plaintiffs the due process the School District was required to provide plaintiffs in connection with the end of their employment.  The School District had a policy, practice, or custom of terminating the employment of permanent employees without providing adequate process related to the deprivation of permanent employees' property interest in continued employment.

152.

As a direct and proximate result of defendants School District's conduct, plaintiffs have suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience

Page 45 – COMPLAINT

KLEIN MUNSINGER LLC
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

and loss of enjoyment of life all to their non-pecuniary loss in an amount to be determined at trial.

### 153.

As a direct and proximate result of defendant School District's conduct, plaintiffs have suffered economic loss in an amount to be proven at trial.

### 154.

Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, costs and disbursements from defendant School District for this claim.

## V.    JURY TRIAL DEMAND

### 155.

Plaintiffs demand a jury trial on all claims and issues triable to a jury.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request the following relief:

1.      Economic damages of not less than $78,000.00 for plaintiff Michelle Eastham and $78,000.00 for plaintiff Terrianne MacEllven;

2.      Non-economic damages of not less than $725,000.00 for plaintiff Michelle Eastham and $575,000.00 for plaintiff Terrianne MacEllven;

Page 46 – COMPLAINT

**KLEIN MUNSINGER LLC**
600 NW NAITO PARKWAY, SUITE G
PORTLAND, OR  97209
PHONE (503) 568-1078

3.      Punitive damages in the amount of $225,000.00 for plaintiff Michelle Eastham and $175,000.00 for plaintiff Terrianne MacEllven;

4.      Plaintiffs' reasonable costs and attorneys' fees incurred in prosecuting this action;

5.      Equitable relief including a prospective injunction prohibiting defendant Carter, defendant Kash, and all other School District employees from promulgating, enforcing, or maintaining a policy prohibiting school employees from reporting suspected child abuse or neglect to law enforcement or DHS, and from continued harassment and abuse of plaintiff Eastham;

6.      Pre-judgment and post-judgment interest on all amounts awarded as consistent with applicable law;

7.      All such other relief for plaintiffs as this Court may deem just and proper.


DATED this 14th day of November, 2017.


KLEIN MUNSINGER LLC


By *s/Damien T. Munsinger*
    Damien T. Munsinger, OSB No. 124022
    damien@kleinmunsinger.com
Of Attorneys for Defendant


Page 47 – COMPLAINT